IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **BARBARA J. WILSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:04-0863 |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**M E M O R A N D U M   O P I N I O N**

    This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's Applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Defendant has filed a Motion for Judgment on the Pleadings and Memorandum in Support (Document Nos. 13 and 14.) and Plaintiff has filed a Motion for Summary Judgment and Memorandum in Support (Document Nos. 11 and 12.)  Both parties have consented in writing to a decision by the United States Magistrate Judge.

    The Plaintiff, Barbara J. Wilson (hereinafter referred to as "Claimant"), filed Applications for SSI and DIB on December 20, 2002 (protective filing date), alleging disability as of September 30, 2002, due to "my back and hips and legs." (Tr. at 59 - 61, 71, 179 - 182.) The claims were denied initially and upon reconsideration. (Tr. at 37 - 38, 44 - 45, 184 - 186, 190 - 191.) On June 24, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ).  (Tr. at 46.)  A hearing was held on September 4, 2003, before the Honorable Arthur J. Conover.  (Tr. at 192 - 224.) During the hearing, the ALJ determined that Claimant should undergo a consultative physical evaluation with assessment. (Tr. at 220.) Dr. Nilima Bhirud submitted a Disability Determination Evaluation

and a Medical Source Statement of Ability to do Work-Related Activities (Physical) in December, 2003 (Tr. at 169 - 177.), and a supplemental hearing was held on June 16, 2004, before ALJ Conover. (Tr. at 225 - 243.) By Decision dated June 23, 2004, ALJ Conover determined that Claimant was not entitled to benefits. (Tr. at 11-17.) The ALJ's Decision became the final decision of the Commissioner on July 16, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 3 - 5.) On August 13, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[1] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c).[2] Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical

---

[1] These Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

[2] The record in this case contains Claimant's subjective statements respecting her mental condition and no clinical or laboratory findings supporting them. Accordingly, the Court finds that the ALJ properly determined that Claimant did not have a medically determinable severe mental impairment.

3

>       signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>           (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>           (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>           (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

4

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of thoracic, sacroiliac and lumbosacral strain. (Tr. at 16, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity "to perform the exertional and nonexertional requirements of work except for lifting and carrying more than 50 pounds occasionally and 25 pounds frequently; she can occasionally climb, stoop and crouch; she can occasionally reach overhead with [her] arms; and she needs to avoid concentrated exposure to vibration. Additionally, she experiences pain that would require simple, repetitive work." (Tr. at 16, Finding No. 6.) Respecting Claimant's ability to return to her past relevant work, the ALJ stated that "[t]he claimant's past relevant work as cashier and maid did not require the performance of work-related activities precluded by her residual functional capacity." (Tr. at 17, Finding No. 7.) Thus, the ALJ concluded that Claimant's impairments did not

prevent her from performing her past relevant work. (Tr. at 17, Findings No. 8.) On this basis, benefits were denied. (Tr. at 17.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on December 18, 1962, and was 40 years old at the time of the administrative hearing (September 4, 2003). (Tr. at 59, 196.) Claimant completed the tenth grade. (Tr. at 77, 195, 198.) In the past, she worked as a cashier, stock clerk and maid. (Tr. at 72, 201 - 203.)

The Medical Record

The Court has reviewed the medical evidence of record and will discuss it in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ failed to evaluate her credibility properly (Document No. 12, pp.15 - 16.); (2) the ALJ failed to properly develop the evidence insofar as he should have ordered a consultative examination of Claimant's mental condition (Id., pp. 16 - 17.); (3) the ALJ failed to consider Claimant's impairments in combination (Id., p. 17.); and (4) the ALJ considered only part of the evidence of record and did not consider the evidence as a whole (Id., p. 18.); and (5) substantial evidence did not support denial of Claimant's claim (Id., pp. 18 - 19.). The Commissioner asserts that the ALJ properly assessed Claimant's pain and credibility and his decision is supported by substantial evidence.

## ANALYSIS

1. The ALJ's Symptoms/Pain/Credibility Analysis.

Claimant contends that the ALJ failed to give credit to Claimant's subjective complaints of disabling pain when "[t]he medical evidence corroborates the plaintiff's testimony regarding her non-exertional disabilities and clearly reflects that the plaintiff is, in fact, disabled and should be entitled to benefits." (Document No. 12, pp. 15 - 16.) The Commissioner responds that the ALJ properly considered Claimant's impairments, medical source opinions, treatment modalities, medications, daily activities and Claimant's subjective allegations in determining the impact of her impairments upon her ability to perform her prior employment. (Document No. 14, pp. 8 - 11.)

At levels four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity, i.e., what the claimant can still

7

do. At level four, the ALJ considers the claimant's symptoms, including pain. A two-step process is used to determine whether a claimant's symptoms, including pain, are disabling. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2002); SSR 96-7p; see also Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the symptoms/pain and the extent to which they affect a claimant's ability to work must be evaluated. Craig, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause symptoms/pain, "the claimant's subjective complaints [of symptoms/pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of symptoms/pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2002). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
>     (i) Your daily activities;
>
>     (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
>     (iii) Precipitating and aggravating factors;

8

>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3) (2002).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an

9

ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which <u>Craig</u> prohibits is one in which the ALJ rejects allegations of pain <u>solely</u> because the pain itself is not supported by objective medical evidence.

Claimant does not state specifically how the ALJ erred in considering her subjective complaints *vis-a-vis* the objective medical evidence in assessing her credibility. The Court has therefore examined the entire record and the ALJ's decision to determine where the ALJ may have erred. The Court finds that the ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms and credibility. (Tr. at 14.) The ALJ concluded that "[t]he claimant greatly minimized her activities of daily living. However, the undersigned finds that the credible medical evidence of record does not provide a basis for such extreme limitations as alleged by the claimant. The undersigned finds that the claimant's overall treatment has been conservative and reveals less than impressive objective findings which does not support her testimony of disability limitations. Also, the claimant does not report taking any prescription pain medication." (Tr. at 15.) Having thoroughly examined the record in view of the ALJ's summary of it, the Court finds the ALJ's summary comprehensive and accurate. The ALJ's assessment of Claimant's credibility and formulation of her RFC including her exertional and non-exertional limiitations is supported by substantial evidence of record. Accordingly, the Court finds the ALJ's symptoms/pain and credibility analysis in conformity with applicable law and Regulations and supported by substantial evidence.

2. <u>The ALJ's Duty to Develop the Record.</u>

Claimant states that "[t]he ALJ indicated in his evaluation of the evidence that the claimant reported that she has problems with her nerves. The claimant has never under gone psychological

counseling, nor has she been hospitalized for any mental impairment since her alleged onset date. (TR 13) The ALJ also stated at the hearing that he didn't think that the plaintiff had a lot of mental health difficulties so he indicated that he would not be sending the plaintiff for a psychological assessment. (TR 220) Surely he was under a duty to order a consultative examination of her mental condition to determine whether or not her mental condition in combination with her other impairments would have rendered her disabled in this case." (Document No. 12, pp. 16 - 17.) The Commissioner responds that the ALJ had the discretion to determine whether or not to send Claimant for a consultative examination and properly concluded that the record was sufficient. (Document No. 14, pp. 13 - 14.)

It is Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. § 416.912(a) (2002). Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment. Id. § 416.912(c). Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as Claimant's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). It appears that Claimant has been represented by counsel in this case throughout the proceedings.

The Court finds Claimant's argument on this point unavailing. Although an ALJ does have a responsibility to help develop the evidence, the evidence in the instant case was adequate for the ALJ to make a determination. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). Claimant stated that she had problems with her nerves and memory and problems with people. (Tr. at 102, 211.) At he conclusion of the September 4, 2003, hearing, ALJ Conover stated that "I don't find Ms. Wilson has a lot of mental health difficulties. . . . I think her pain is probably what's causing the problem with people." (Tr. at 220.) At the June 16, 2004, supplemental hearing, the ALJ asked Claimant's attorney "[n]o mental health treatment?" to which her attorney answered "[n]o." (Tr. at

11

228.) The ALJ asked Claimant about her nerves and what was causing her to be upset. (Tr. at 234.) Claimant responded "[j]ust life itself anymore. I mean I'm getting ready to lose my home and anybody can look at my work record and see that I'm not a lazy person. And just getting up in the morning would make me have a nervous breakdown." (Tr. at 235.) The ALJ stated as follows in his decision:

> The claimant reported that she has problems with her nerves. The claimant testified that she has problems with anger control. The claimant has never undergone psychological counseling, nor has she been hospitalized for any medical impairment since her alleged onset date. Therefore, the undersigned finds that the claimant's alleged mental health problem is not a medically determinable impairment.

(Tr. at 13 (Citation to Exhibit omitted.)) The Court finds that the record contains no evidence indicating that Claimant has had treatment or prescribed medications for a mental impairment. Claimant was responsible in the first place for producing evidence in support of her claim and failed to produce any evidence that she had a severe mental impairment. The record was sufficient for the ALJ to render his decision, and the ALJ had no duty to develop it by obtaining a further evaluation of Claimant as Claimant states.

3. <u>The ALJ's Consideration of Claimant's Impairments in Combination.</u>

Claimant asserts that "[t]he ALJ in his findings indicated that the plaintiff had thoracic strain, sacroiliac strain, and lumbosacral strain. (TR 16) What he did in this case was to fractionalize her elements and consider them in isolation. He is under a duty to consider these elements in combination to determine the impact on the plaintiff's ability to engage in substantial gainful activity. He did acknowledge the existence of some of her problems, however, he failed to combine them and determine how they could impair her ability to work. For these reasons, the Alj's decision is incorrect." (Document No. 12, p. 17.) It does not appear that the Commissioner has specifically addressed Claimant's assertion.

The Social Security Regulations provide as follows:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2002). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

The Claimant fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of Claimant's impairments in combination and "fractionalized" the impairments. The ALJ specifically noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 12.) The ALJ then determined Claimant's impairments, "thoracic strain, sacroiliac strain, and lumbosacral srain . . ..", in view of clinical findings. (Tr. at 12 - 13.) The ALJ proceeded to determine Claimant's symptoms in view of her subjective complaints and clinical findings in medical documents in the record. (Tr. at 14 - 15.) The ALJ did not fractionalize the impairments as he found them or consider any evidence separately or categorically. The Court finds that the ALJ plainly considered the objective and subjective evidence respecting the severity of Claimant's impairments in combination and determined Claimant's RFC on the basis of his findings in these regards. (Tr. at 21.) The ALJ's

13

analysis is consistent with applicable law and Regulations and supported by substantial evidence. Claimant's assertion to the contrary is without merit.

4. The ALJ's Consideration of All of the Evidence of Record.

Claimant next argues that the ALJ relied upon only part of the evidence of record in denying this claim. (Document No. 12, p. 18.) Claimant argues that the ALJ "discounted evidence regarding plaintiff's mental condition, losing her vision wherein every thing would be white and she would get severe headaches and her hands going numb." (Id.) It does not appear the Commissioner has addressed this assertion.

The ALJ considered Claimant's report of problems with her nerves and numbness in her hands. (Tr. at 13 - 14.) It does not appear, however, that the ALJ considered Claimant's subjective report of headaches and vision problems. There is no indication in the record that Claimant's headaches and vision problems were debilitating and affected her RFC. There is no clinical evidence supporting Claimant's claims. The Court finds that the ALJ's decision includes an adequate discussion of all of the medical evidence of record and Claimant's symptoms/pain. (Tr. at 13-16.) Claimant's assertion that the ALJ did not consider all of the evidence of record is therefore without merit.

5. Substantial Evidence to Deny Claimant's Claim.

Claimant asserts that "[t]he ALJ's failure to take into consideration the plaintiff's IQ shows that the evidence was not substantial to deny this claim." Claimant further reiterates her assertions discussed above. (Document No. 12, p. 18 - 19.) The Commissioner states that "there is no evidence that [Claimant's] IQ, which is presumably unchanged by her back injury, impacted her ability to return to her past work." (Document No. 14, p. 13.) The Court finds no evidence in the record indicating a decline in Claimant's intellectual functioning. Claimant's assertion in this regard is

14

therefore not meritorious.

For the reasons stated above, The Court finds, contrary to Claimant's assertion, that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 11.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, the Commissioner's decision is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 20, 2005.

R. Clarke VanDervort
United States Magistrate Judge